UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re

JEFFERY J. SILVERMAN                             Case No. 09-32988-WRS
                                                 Chapter 7
        Debtor.

GRAVELY CHIROPRACTIC, P.C., &                    Adv. No. 09-03082-WRS
HANCOCK BANK OF ALABAMA,

        Plaintiffs,

    v.

JEFFERY J. SILVERMAN,

        Defendant.

## MEMORANDUM DECISION

This Adversary Proceeding came before the Court for trial on September 27, 2010. Evidence was heard and at the conclusion of the trial, the Court took the case under advisement. The Court now makes its Findings of Fact and Conclusions of Law. For the reasons set forth below, judgment is entered in favor of Plaintiffs Gravely Chiropractic, P.C., and Hancock Bank and against Defendant Jeffery J. Silverman. For the reasons set forth below, the Court finds that the indebtedness owed by Defendant Jeffery J. Silverman is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A).

## I. FACTS

Defendant Jeffery J. Silverman filed a petition in bankruptcy pursuant to Chapter 7 of the Bankruptcy Code in this Court on October 30, 2009, initiating Case No. 09-32988. Silverman has been in the real estate business for twenty years. In Schedule A, Silverman reports ownership of 10 separate parcels of real property which he values at $2,005,000. (Case No. 09-

1

32988, Doc. 1). Silverman further scheduled personal property which he valued at $280,000. On the liability side of the ledger, Silverman listed secured debt in the amount of $3,000,000 and unsecured debt of $8,500,000. The Schedules and Statements on file in the bankruptcy case indicate that Silverman had a reasonably large business. Having heard the evidence, including testimony from Silverman, the Court finds that he has a level of sophistication which corresponds to the size of his business.

Silverman did business both in the Montgomery area as well as the Alabama and Florida Gulf Coast area. Silverman testified that he noted a downhill slide in the local economy in 2005 and made a decision to liquidate his properties in 2007. Pursuant to that strategy, in 2008, Silverman sold a condominium in Perdido Key, Florida, which is referred to as the La Riva 5E property, for $900,000. Unfortunately, he owed $1,200,000 against the property, leaving a deficiency of $300,000. United Bank held a second mortgage on the La Riva condo and was undersecured to the extent of $300,000. Silverman entered into a contract with United Bank to finance the deficiency resulting from the sale of the La Riva condo on September 4, 2008. (Plaintiffs' Exhibit 4). United Bank agreed to release its mortgage on the La Riva condo, taking in lieu, mortgages on three other properties owned by Silverman: (1) 12094 Gulf Beach Highway; (2) Unit 1 of Romar Plaza Commercial Condo; and (3) Lot 9 Canal Road. (Plaintiffs' Exhibit 4).

The September 4, 2008, contract contained a provision for the release of the mortgages as follows:

> A sales price acceptable/reasonable to the bank must be obtained. United Bank will then agree to release each mortgage listed above upon receipt of the following:
>
> 1. Sales contract for each property
> 2. HUD1 statement for each property
> 3. 50% of net proceeds on each property plus any borrower commissions earned applied to this loan.

(Plaintiffs' Exhibit 4).

Of interest here is the Romar Plaza property, which was Silverman's Baldwin County real estate office. On September 22, 2008, Silverman executed a mortgage in favor of United Bank on the Unit 1 Romar Plaza property as called for by the September 4, 2008 contract. (Plaintiffs' Exhibit 9). The September 22, 2008 deed was recorded with the Judge of Probate for Baldwin County, Alabama on October 8, 2008. Presumably, Silverman executed mortgages on the other two properties as well; however, the mortgages on those properties are not in evidence.

On September 15, 2008, Silverman entered into a contract with Plaintiff Gravely to sell the Romar Plaza property. (Plaintiffs' Exhibit 6). This property had been Silverman's Baldwin County real estate office and Gravely intended to use the property for his chiropractic office. The stated price was $228,000. *Id.* Silverman and Gravely entered into a "side agreement" whereby Silverman was to "remit to Buyer (Gravely) the sum of $30,000 for remodel build out, furniture, fixtures and equipment as the Buyer sees fit." (Plaintiffs' Exhibit 7) (parenthetical added). If one deducts the $30,000 rebate, the true price of the property was $198,000, considerably less than the $349,000 for which the property had been appraised several years

3

earlier.[1]

On October 16, 2008, the sale of the Romar Plaza office to Gravely was closed. The property was subject to a first mortgage in favor of Geraldine O. Kopesky. The Kopesky mortgage was disclosed and it was satisfied from the proceeds of the sale. (Plaintiffs' Exhibit 13). However, the second mortgage to United Bank was not disclosed by Silverman, nor was it discovered by the title insurance company when it did its title search. Silverman executed a Warranty Deed to Plaintiff Gravely Chiropractic on October 16, 2008, at the closing, which did not disclose his mortgage to United Bank. (Plaintiffs' Exhibit 11). In addition, Silverman did not disclose the United Bank mortgage on the Seller's Affidavit, which Silverman also executed at closing. (Plaintiffs' Exhibit 14). Silverman does not deny that he executed either the deed or affidavit at the closing, nor does he dispute that the mortgage was not disclosed. Rather, Silverman's defense is that he did not realize that he had encumbered the Romar Plaza office property. Silverman admits that he executed the mortgage in question but contends that he owned a number of properties and that he was confused as to which properties were encumbered.

The central question here is whether Silverman knew that he had in fact mortgaged the Romar Plaza office to United Bank. If Silverman was aware of the mortgage, it gives rise to a very strong inference that he intended to defraud Silverman and by extension, Hancock Bank. Title insurance was issued by Professional Land Title who also conducted the closing of the sale. Betsy McKinney of Professional Land Title conducted the closing and testified at trial. McKinney testified that a preliminary title policy was issued approximately one week prior to

---

[1] There was no contention at trial that the Romar Plaza property was sold for less than its reasonably equivalent value. These figures give some indication of the degree of financial stress which resulted from the precipitous decline in Gulf area property as a result of the current recession.

4

closing that the United Bank mortgage did not appear on their property title work. McKinney further testified that Silverman inquired of her at closing as to whether title was clear. After the sale closed Professional Land Title updated the title work and issued a final title insurance policy. At that time they discovered the United Bank mortgage. Silverman's inquiry, whether title was clear, may be innocuous enough on its face, however, taken together with the totality of circumstances in this case suggests that he was aware of the fraud he was perpetrating and he wanted to know whether his sleight of hand had been discovered.[2]

We should again examine the time line of the events here, which are summarized as follows:

| | |
|---|---|
| September 4 | Silverman enters into contract with United Bank. |
| September 15 | Silverman enters into contract with Gravely. |
| September 22 | Silverman executes mortgage to United Bank |
| October 8 | United Bank mortgage recorded in Baldwin County. |
| October 16 | Silverman-Gravely sale closed. |

When one looks at the time line here, one is immediately struck that the workout of the deficiency with United Bank was taking place simultaneously with the sale of the Romar Plaza property to Gravely. Given Silverman's level of sophistication, it is inconceivable that he did not know that he was hiding the United Bank mortgage from Gravely and the sale to Gravely from United Bank. Silverman simultaneously placed a second mortgage on the Romar Plaza

---

[2] Silverman no doubt knew that his fraud would eventually be discovered. His plan was to close the sale, take the money, get out from under the under the Kopesky mortgage and then present United Bank with a *fait accompli*, hoping to buy his way out of the mess for less than it would have cost had he disclosed everything in advance. Mike Rogers of United Bank testified that Silverman offered to give the Bank $1,000 to release its mortgage on the Romar Office property, which is considerably less than it would have cost had Silverman been honest. What is particularly nasty about this fraud is that it netted Silverman a relatively small amount of money,

5

Case 09-03082    Doc 37    Filed 11/08/10    Entered 11/08/10 08:14:45    Desc Main
Document      Page 5 of 14

property while he was selling it to Gravely. Silverman knew that Gravely was not aware of the United Bank and he carefully manipulated these events so as to prevent him from learning so, at least until after the final title insurance policy was issued.

Steven Gravely testified at trial as to this transaction. Gravely explained that he had leased another office through the end of 2008, and that he would have preferred to delay closing on his purchase from Silverman so as to minimize the period of time during which he had to pay rent on the property he was vacating as well as pay a mortgage on the newly acquired property. Gravely testified that Silverman was eager to close the transaction and that he offered to pay $3,000 to offset the "double rent" quandary that an early closing would create. The transaction closed early to accommodate Silverman's wishes; however, he reneged on his promise to pay Gravely the $3,000.[3] This evidence shows both Silverman's general inclination to dishonesty as well as to prove his actual knowledge that the United Bank mortgage encumbered the property. The earlier the sale closed, the less likely that Silverman's fraud would be discovered.

Silverman testified that he had no incentive not to disclose the United Bank mortgage. The Court rejects that testimony. In fact, Silverman obtained $12,000 net proceeds from the sale. (Plaintiffs' Exhibit 18).[4] Had the transaction been disclosed to United Bank, Silverman would have been required to pay United Bank 50% of the net proceeds, plus the entire amount of Silverman's real estate commission. (Plaintiffs' Exhibit 4). Moreover, had United Bank been apprised of the sale to Gravely in advance, it may not have agreed to the sale. The true sale price

---

while placing Gravely at a much greater risk.

[3] Gravely sued Silverman in the Baldwin County Circuit Court and obtained a money judgment for $3,000. *Gravely v. Silverman*, Case No. 05-SM-2009-900188.

[4] Professional Land Title actually disbursed a check in the amount of $42,078.89 to Silverman, however, he was obligated to rebate $30,000 to Gravely pursuant to the side agreement. (Plaintiffs' Exhibit 7).

6

was only $198,000. United Bank may well have balked at the sale price, believing it too low. Mike Rogers of United Bank testified at trial and voiced a concern as to the sale price. Rogers was unable to speculate as to whether the bank would have approved the sale in advance, had it known the true state of affairs. Whether United Bank would have agreed to the sale is at this point academic. What is clear is that Silverman had considerable incentive to hide the transaction from United Bank and to fail to disclose the United Bank mortgage to Gravely and the title insurance company. The Court rejects Silverman's claim that he had no incentive to deceive as well as his claim that he was not aware that the United Bank mortgage encumbered the Romar Plaza property.

While the parties did not mention the "Statement of Financial Affairs" that Silverman filed in his bankruptcy case, the Court will note the following here. Question No. 10 to the Statement of Financial Affairs provides as follows: "List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within two years immediately preceding the commencement of this case." Silverman answered in response, "None." (Case No. 09-32988, Doc. 1). As the petition in bankruptcy was filed in this Court on October 30, 2009, all such transfers which took place on or after October 30, 2007, should have been disclosed. At a minimum, the three parcels of property mortgaged to United Bank pursuant to the September 4, 2008 agreement and the sale of the Romar Plaza office condo to Gravely, should have been disclosed in response to Question No. 10 in the Debtor's Statement of Financial Affairs. That Silverman has filed a false Statement of Financial Affairs in his bankruptcy case, and that the false statement concerns the transactions which are the subject of these proceedings, are facts which further weigh against Silverman.

7

Case 09-03082    Doc 37    Filed 11/08/10    Entered 11/08/10 08:14:45    Desc Main
Document      Page 7 of 14

The Court heard testimony from five witnesses, including Silverman and it has considered documentary exhibits as well. Having carefully considered all of the evidence, the Court finds that Silverman's testimony is not credible. Moreover, the Court credits the testimony of Steven Gravely. The Court finds that Silverman intentionally concealed the existence of the United Bank mortgage, that he intended to deceive Gravely and others interested in the transaction, and that they were deceived. The Court finds that Silverman's misrepresentations were material. The Court finds that the Plaintiffs' relied upon the false statements made by Silverman and that their reliance, under the circumstances, was justifiable. The Court further finds that the Plaintiffs have suffered damages as a result of the misrepresentation. The amount of the damages has not been determined here due to the pendency of the litigation in Baldwin County. The Court anticipates that the Circuit Court in Baldwin County will determine the amount of the damages. In the event that this does not come to pass, this Court will retain jurisdiction to make a determination as to damages if needed.

## II. CONCLUSIONS OF LAW

### A. *11 U.S.C. § 523(a)(2)(A) Claim*

Section 523(a)(2)(A), of Title 11 of the United States Code provides, in part, as follows:

> (a) A discharge under section 727 . . . does not discharge an individual debtor from any debt –
>
> > (2) for money, property, services . . . to the extent obtained, by –
> >
> > > (A) false pretenses, a false representation or actual fraud, other than a statement respecting a debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A). Exceptions to discharge are to be strictly construed in favor of the

debtor. *In re Moore*, 2007 WL 417212, *2 (Bankr.M.D.Ala. 2007) (citing *Meyer v. Rigdon*, 36 F.3d 1375, 1385 (7th Cir. 1994)). Moreover, the debtor carries the burden of proving that the debt should be excepted from discharge. Fed.R.Bankr.P. 4005; *see In re Moore*, 2007 WL 417212 at *2 (referencing *Check Control, Inc. v. Anderson (In re Anderson)*, 181 B.R. 943, 949 (D.Minn. 1995)).

There are four elements to a fraud claim which the plaintiff must prove by a preponderance of the evidence:

> (1) The debtor made a false representation of a past or current material fact;
> (2) With the intent to deceive the creditor;
> (3) The creditor justifiably relied upon the representation; [and]
> (4) The creditor sustained loss as a proximate result of the representation.

*Capital Chevrolet v. Bullock (In re Bullock)*, 317 B.R. 885, 888-89 (M.D.Ala. 2004) (citing *St. Laurent v. Ambrose (In re St. Laurent)*, 991 F.2d 672, 676 (11th Cir. 1993)); *In re Moore*, 2007 WL 417212 at *2 (Bankr.M.D.Ala. 2007); *see also Grogan v. Garner,* 498 U.S. 279, 285, 111 S.Ct. 654, 658, 112 L.Ed.2d 755 (1991) (holding that a preponderance of the evidence is the proper burden of proof in actions for nondischargeability).

**1. Defendant made a misrepresentation of a material fact to the Plaintiffs.**

An actual, overt misrepresentation is an essential element for fraud under § 523(a)(2)(A). *In re Bullock*, 317 B.R. at 889. "This misrepresentation must relate to a past or existing material fact." *Id.* (citing *Lycan v. Walters*, 904 F.Supp. 884, 897 (S.D.Ind. 1995)). Representations as to future intentions or promises to perform certain acts in the future generally do not give rise to actionable fraud, unless the defendant had no intent to fulfill the promise at the time of its making. *In re Moore*, 2007 WL 417212 at *2; *see also Thomas v. Turner (In the Matter of Turner)*, 12 B.R. 497, 501 (N.D.Ga.1981) (generally a fraud action will not lie for misrepresentations as to future promises or facts, but an exception exists where, at the time the

9

Case 09-03082    Doc 37    Filed 11/08/10    Entered 11/08/10 08:14:45    Desc Main
Document    Page 9 of 14

promise was made, the promisor had the intent not to perform the promised act).

Here, the Court has found that due to Silverman's experience in the real estate industry, he had the level of sophistication to match the size of Silverman's real estate business. Moreover, the Court has found that Silverman was aware of both transactions occurring, nearly simultaneously. As Silverman entered into contracts with both Gravely and United Bank, he had a duty of good faith and fair dealing to both parties.[5] However, Silverman acted contrary to that duty. He failed to disclose the sale of the Romar Plaza property to United Bank, as required by the mortgage, resulting in a monetary windfall to him. Silverman hid the sale of the Romar Plaza for his monetary benefit, resulting in a misrepresentation of a material fact under the mortgage with United Bank.

With regards to the Gravely contract, the closing called for Silverman to provide Gravely with a warranty deed to the Romar Plaza property. The warranty deed contains a covenant against encumbrances, requiring Silverman to disclose all known encumbrances.[6] Silverman failed to do so, even though Silverman's own actions between the signing of the sale contract and the closing created the bank's encumbering mortgage. Silverman also signed an affidavit saying that aside from the one disclosed mortgage in favor of Ms. Kopesky, no other encumbrances existed on the property. Silverman misrepresented material facts--the state of the title of the property Gravely was purchasing.

---

[5] "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Restatement (Second) of Contracts § 205 (1979).

[6] Under Alabama law, a general warranty deed contains a covenant against encumbrances. *Health Science Products, Inc. v. Taylor (In re Health Science Products)*, 183 B.R. 903, 931 (N.D.Ala. 1995).

10

### 2. The Defendant had the intent to deceive the plaintiffs.

The Court finds that Silverman intended to deceive Gravely. A debtor's actual intent to deceive may be shown by circumstantial evidence. *Chevy Chase Bank v. Briese (In re Briese)*, 196 B.R. 440, 451 (W.D.Wis. 1996). Moreover, the court's assessment of a debtor's credibility and demeanor largely contributes to a court's determination of a debtor's fraudulent intent to deceive. *In re Bullock*, 317 B.R. at 890 n. 1 (citing *Palmacci v. Umpierrez*, 121 F.3d 781, 785 (1st Cir. 1997) (citing *Commerce Bank & Trust Co. v. Burgess (In re Burgess)*, 955 F.2d 134, 137 (1st Cir. 1992)).

The circumstances here show that Silverman had the actual intent to deceive. The Court finds that Silverman's testimony lacks credibility. The Court concludes that Silverman knew that he was mortgaging the Romar Plaza property to United Bank while conducting a sale to Gravely. He disclosed neither transaction to either party. He stood to benefit from not disclosing the transactions because he would not have to pay United Bank the proceeds of the sale or his real estate broker's commission for selling the property. Moreover, Silverman knew that Gravely wanted to delay the sale until after Gravely's lease on the property he was vacating expired, but Silverman pushed to move the closing along. Rushing the closing allowed the United Bank mortgage to slip through the cracks. The evidence here shows that Silverman had the actual intent to deceive. Thus, the Court concludes that second element for fraud is met.

### 3. The plaintiffs justifiably relied on the defendant's misrepresentation.

Under the third element, "justifiable reliance" is the appropriate standard, rather than the more stringent "reasonable reliance" standard for judging a plaintiff's reliance on the material misrepresentations. *Field v. Mans,* 516 U.S. 59, 61, 116 S.Ct. 437, 439, 133 L.Ed.2d 351 (1995).

11

"Justifiable reliance permits a plaintiff to rely unequivocally on a representation or promise made by a debtor, without investigating or acting reasonably to determine the truth of the representation or promise, unless the statement is patently false." *FCC National Bank v. Gilmore*, 221 B.R. 864, 874 n.10 (N.D.Ala. 1998). However, justifiability is not unlimited – the plaintiff is "required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." Restatement (Second) of Torts § 541 cmt. a (1976). Moreover, "[j]ustification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases." *Field*, 516 U.S. at 71 (quoting Restatement (Second) of Torts § 545A cmt. b (1976)). With this guidance, the Court now turns to the case at hand.

The Court has found that Silverman made material misrepresentations with the intent to deceive Gravely and others in the transaction. The Court also has found that Gravely's reliance on Silverman's statements was justifiable. Silverman simultaneously contracted to sell the Romar Plaza property to Gravely while Silverman was granting United Bank a mortgage on the property. Silverman did not disclose the United Bank mortgage on the Seller's Affidavit, which was executed at the closing. Gravely did not blindly rely on Silverman's Seller's Affidavit, but used his senses and had a title search conducted. Silverman's own actions made it so that Gravely would not discover United Bank's mortgage on the property prior to closing. With a title search conducted and a disclosed mortgage, Gravely had no reason to think Silverman was further encumbering the Romar Plaza property. A person in Gravely's position would rely on the title search and a Seller's Affidavit as well as the belief that the seller would disclose any

12

changes in the circumstances of the sale. Thus, Gravely was justified in relying on Silverman's statements and omissions regarding the status of the Romar Plaza property's title.

### 4. The plaintiffs suffered a loss as a proximate result of Silverman's misrepresentation.

The plaintiffs suffered a sizeable loss that was the proximate result of Silverman's misrepresentation. Gravely and Gravely Chiropractic thought they were purchasing the Romar Plaza property free and clear of any mortgages, but instead received property with a $300,000 mortgage on it. Additionally, Gravely was rushed into completing the sale even though he wanted to wait until his lease on his previous office expired. Silverman agreed to cover the cost of the "double rent" Gravely would have to undertake to pay both rent and mortgage, but reneged. As a result, Gravely lost an additional $3,000. Overall, Silverman's representations and omissions caused Gravely and Gravely Chiropractic to suffer a loss.

Finding that all four elements have been met, this Court finds that the Defendant, Jeffrey Silverman engaged in fraud under 11 U.S.C. § 523(a)(2)(A) and thus the resulting damages are nondischargeable.

While the Court finds that the Plaintiffs suffered damages as a result of Silverman's fraud, the Court will not, at this time, fix the amount of damages. There is a pending civil action in the Circuit Court for Baldwin County styled *Gravely Chiropractic, P.C., et. al., v. Jeffrey Silverman, et. al.*, Civil Action No. CV-2009-900949. As the court in Baldwin County will be considering issues not raised here, it is in a better position to determine the amount of damages resulting from Silverman's fraud. To the extent necessary, the Plaintiffs' are given relief from the automatic stay and the discharge injunction to permit them to proceed against Silverman, both to liquidate their damages and, if necessary, to collect any damages that may be awarded.

### B. 11 U.S.C. § 523(a)(6) Claim

13

As the Plaintiffs' damages are found nondischargeable under 11 U.S.C. § 523(a)(2)(A), the Court finds it unnecessary to discuss the Plaintiffs' § 523 (a)(6) claim.

### III. CONCLUSION

This Court finds that the Plaintiffs' claims against Silverman for fraud is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A). A separate judgment consistent with this memorandum shall be entered.

Done this 5th day of November, 2010.

/s/ William R. Sawyer
United States Bankruptcy Judge

c: Charles C. Simpson III, Attorney for Plaintiff
Edward Russell March III, Attorney for Plaintiff
Michael A. Fritz Sr., Attorney for Defendant